## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| GUILLERMO A. HANDAL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:12-cv-00406-MHT-CSC |
| | ) | |
| ONE WEST BANK, F.S.B., et al., | ) | |
| | ) | |
| Defendants. | ) | |

### AMENDED COMPLAINT

COME NOW plaintiffs Guillermo A. Handal ("Handal") and Nelson M. Handal, M.D. (collectively, "Plaintiffs") and amend their Verified Complaint for Preliminary Restraining Order, Permanent Injunction and Damages, as amended on April 30, 2012 ("Complaint") against IndyMac Bank F.S.B. ("Failed Bank"), IndyMac Federal Bank, F.S.B ("IndyMac Federal"), OneWest Bank, F.S.B. ("OneWest"), and Deutsche Bank National Trust Company ("Deutsche Bank") as follows (Failed Bank, IndyMac Federal, OneWest and Deutsche Bank are sometimes collectively referred to hereinafter as "Defendants"):

### *JURISDICTION*

1.      Plaintiffs are both adult resident citizens of Dothan, Houston County, Alabama and subject to the jurisdiction of this Court.

2.      Mortgage Electronic Registration Systems, Inc. ("MERS"), upon information and belief, is a foreign corporation and at all times material to this complaint, was doing business in Houston County, Alabama and subject to the jurisdiction of this Court. MERS has been dismissed as a party to this litigation.

3.    Failed Bank, upon information and belief, was a federally chartered savings bank that failed in or around July 2008 and was placed into receivership by the Federal Deposit Insurance Corporation (the "FDIC") shortly thereafter.  Prior to its failure, Failed Bank was the nation's seventh largest mortgage originator in the United States and at all times material to this complaint, was doing business in Houston County, Alabama and subject to the jurisdiction of this Court.

4.    Defendant IndyMac Federal is a federal entity created by the FDIC to manage the business and assets of Failed Bank, including Plaintiffs' Loan (as hereinafter defined) and is subject to the jurisdiction of this Court.

5.    Defendant One West, upon information and belief, is the successor entity to Failed Bank.  One West, upon information and belief, was created and/or organized by IMB HoldCo, LLC at or before the acquisition of Failed Bank's assets and liabilities from the FDIC and is a continuation of the business of Failed Bank and IndyMac Federal.  One West has its principal place of business in Pasadena, California and at all times material to this complaint, was doing business in Houston County, Alabama and subject to the jurisdiction of this Court.

6.    Defendant Deutsche Bank is a national banking association.  At all times material to this complaint Deutsche Bank was doing business in Houston County, Alabama and subject to the jurisdiction of this Court.

7.    This Court has subject matter jurisdiction as to the issues presented in this case and personal jurisdiction over all parties before the Court.

## *STATEMENT OF CASE*

8.      Plaintiffs adopt and incorporate herein by referencing all preceding paragraphs as if fully set forth herein.

9.      In or around March 2006, Handal contracted for the purchase of a home located at 206 Veritas Drive, Dothan, Alabama for the price of $232,500.00.

10.     In or around March 2006, Handal contacted Failed Bank for the purpose of securing financing for the purchase of the aforesaid home.  Handal communicated with Failed Bank loan officer Tom Smith, who informed Handal that he qualified for a 5 year fixed 12 MAT loan program.  Tom Smith, on behalf of Failed Bank, recommended this program to Handal and further explained that it was perfect for a young businessman such as Handal.

11.     On or about March 30, 2006, Handal closed the transaction and entered into and executed an adjustable rate promissory note (the "Note") secured by a first mortgage in favor of Failed Bank (the "Mortgage"), hereinafter collectively referred to as the "Loan". (*See* Adjustable Rate Note attached to the Complaint as Exhibit A[1] and Mortgage attached to the Complaint as Exhibit B.)  Plaintiff Dr. Handal was not a party to the Note, but was a signatory on the Mortgage.  A second mortgage was also executed in favor of Failed Bank, but has since been satisfied.

---

[1]      All exhibits referenced herein were attached to the Complaint and are incorporated herein by this referenced. Therefore such exhibits will not be reproduced again.

12.     On the date of the closing, Handal presented with ten percent (10%) of the purchase price, plus closing costs for a total of $16,306.10.

13.     Handal understood through his dialogue with Tom Smith as well as the truth in lending disclosure statement provided prior to and at the time of the closing that the Loan was a five (5) year fixed product.  However, this loan was a "toxic" loan in that it was a five (5) year fixed MAT loan with an option ARM.   Handal understood that he could refinance the Mortgage thirty-six (36) months after the closing without penalty.  The truth in lending disclosure statement provided that Handal would make payments of $613.39 for thirty-four (34) months/payments and beginning March 1, 2009, Handal's payments would increase to $1,331.60 for an additional four hundred and forty-five (445) months/payments. (*See* Truth In Lending Disclosure Statement attached to the Complaint as Exhibit C.)

14.     On or about July 21, 2008, IndyMac Federal informed Handal that his monthly payments would increase from $613.39 to $1,464.04.  This new payment amount would, according to IndyMac Federal, be reflected in Handal's September 2008 statement. (*See* Complaint, Exhibit D)  In or around July 2008, the FDIC seized Failed Bank, creating one of the largest bank bankruptcies in the history of the United States.

15.     In or around August 2008, Handal sought assistance from Alliance Network Team, LLC ("Alliance"), a housing counseling agency, to assist with the resolution of the matter through discussions with IndyMac Federal's loss mitigation department.

16.     On or about September 8, 2008, IndyMac Federal notified Handal and/or representatives of Alliance that Handal's request for a loan modification had been received, no further documentation was needed and to allow thirty (30) days for review.

17.     On or about November 19, 2009, after having received no response from IndyMac Federal as to Handal's modification request, representatives of Alliance and/or Handal contacted IndyMac Federal as to the status of the request.  Handal and/or Alliance was informed that the loss mitigation department was awaiting guidance from the new administration before making a determination on Handal's modification request.  During this period, Alliance also contacted the FDIC concerning Handal's modification request, and upon information and belief, the FDIC contacted IndyMac Federal and directed it to consider Handal's modification application immediately.

18.     On or about December 4, 2008, Alliance was informed that Rick Lopez with the FDIC would be the contact for Handal's modification request and that Mr. Lopez had appointed Juan Lopez with the loss mitigation department to review the modification request.

19.     On or about December 12, 2008, Juan Lopez informed representatives of Alliance that the Loan had been approved for modification.  Juan Lopez explained further that the modification agreement would be delivered to him within the following week.

20.     In or around December 2008, Handal received the modification agreement from IndyMac Federal.  On or about December 20, 2008, Handal executed the modification agreement   permanently modifying the terms of the Mortgage (the

"Modification Agreement").  (*See* Complaint, Exhibit E.)  Handal completed and submitted an IRS form 4506, his most recent pay stub, along with a check in the amount of $869.20. The executed modification package was delivered and received by IndyMac Federal on or about December 23, 2008.  Pursuant to the terms of the Modification Agreement, this agreed-upon modification would bring Handal's account current and provide him with an affordable monthly payment.

21.    The tendered check was negotiated and deposited by IndyMac Federal on or about December 31, 2008.

22.    Handal has and continues to make monthly payments in the amount of $869.20 pursuant to the Modification Agreement.

23.    In or about January 2009, Handal received a telephone call from IndyMac Federal's collection department requesting a mortgage payment of $1,464.04. Handal informed the representative that the Loan had been modified in December 2008.  The representative informed Handal that they showed no record of the Loan ever being modified.

24.    Handal immediately contacted Alliance to discuss the situation. Representatives of Alliance contacted Rick Lopez to inquire as to what had transpired.  Rick Lopez informed Alliance that he was not aware of any problem with the modification, and agreed to look into the matter.

25.    On or about February 5, 2009, Rick Lopez requested additional documentation from Alliance in order to reanalyze the loan modification so that it could be concluded and implemented.

26.     On or about February 27, 2009, Rick Lopez informed representatives of Alliance via email that Juan Lopez was still reviewing the information.

27.     On or about March 12, 2009, Handal received correspondence from IndyMac Federal stating that "Your request had a thorough consideration but we have determined that there are no loan modification options for you at this time.  We are not able to modify your loan because your loan terms were recently modified and cannot be modified again at this time."  (*See* Complaint, Exhibit F.)

28.     On or about March 19, 2009, Handal received notice from OneWest, through its legal counsel, that that it was initiating foreclosure proceedings on the subject property due to the Handal's default on the Note and Mortgage.  (*See* Complaint, Exhibit G.) On or about that same day, OneWest published notice of the foreclosure in the *Dothan Eagle* with subsequent notices to be published on March 26, 2009 and April 2, 2009.

29.     At the request of Handal's counsel, OneWest suspended the foreclosure proceedings in or around March 2009.

30.     The aforesaid actions and conduct by Defendants have caused Plaintiffs damages and injury by damaging their reputation in the community, adversely affected their credit rating and otherwise submitted them to unnecessary mental anguish.  Such action will also deprive Plaintiffs of their use and enjoyment of the real property that is the subject of the Loan.

31.     Without relief, Plaintiffs will continue to suffer immediate and irreparable injury, loss and damages as a result of the direct actions and current course of conduct of OneWest, and Plaintiffs have no adequate remedy at law.

**COUNT I**
***Breach of Contract/Declaratory Relief***

32.     Plaintiffs adopt and incorporate herein by referencing all preceding paragraphs as if fully set forth herein.

33.     Handal entered into a valid and binding contract with IndyMac Federal, which is evidenced by the Modification Agreement executed on December 20, 2008.

34.     By the terms of the Modification Agreement, and for valuable consideration, IndyMac Federal agreed to modify the terms of the Note and Mortgage on a permanent basis, making Handal's monthly mortgage payments total $869.20.

35.     Handal has fully performed all of his contractual obligations under the Modification Agreement.

36.     IndyMac Federal breached the Modification Agreement by (i) failing to communicate the acceptance of the modification internally, (ii) by directing its collection department to continue to attempt to collect the pre-modification debt on the Loan; and (iii) denying that the modification had occurred, all of which caused Plaintiffs damages.

37.     OneWest breached the provisions of the Modification Agreement by initiating foreclosure proceedings against Plaintiffs in March 2009 and by reporting false, inaccurate and otherwise libelous information to national credit bureaus.

38.     Defendants continue to breach their contractual obligations by continuing collection efforts and by reinitiating foreclosure proceedings against Plaintiffs.

39.     The facts alleged present *prima facie* evidence that Plaintiffs are likely to succeed on the merits of this breach of contract claim and are entitled to immediate injunctive relief.

40.     As alleged herein, under the terms of the Modification Agreement, Handal's  monthly mortgage payments were permanently modified and should total $869.20 per month.  However, because Defendants have and continue to breach their obligations, Plaintiffs' damages continue to accrue.

41.     As a result of Defendants' breach, Plaintiffs have suffered and will continue to suffer loss of reputation in the community and loss of credit worthiness.

42.     Without injunctive relief, Plaintiffs have no means by which to prevent further damage to their reputation and credit standing.

43.      Monetary damages would be inadequate to compensate Plaintiffs from further or future actions anticipated by Defendants.  Damages suffered by Plaintiffs can be expected to continue in the absence of injunctive relief.

44.     The balancing of equities favors the issuance of an injunction against Defendants.  The threatened injury to Plaintiffs outweighs any threatened harm that would

be placed upon Defendants if injunctive relief is granted.  No public disservice will occur from the granting of injunctive relief.  Indeed, the public interest in protecting Plaintiffs' reputation in the community along with allowing Handal to continue residing within his home without the threat of wrongful and unwarranted foreclosure can only be served through the entry of injunctive relief.

45.    Plaintiffs have no adequate remedy at law.

46.    Plaintiffs seek declaratory relief pursuant to Rule 57 of the *Ala. R. Civ. P.* and § 6-6-223 of the *Code of Alabama* (1975), seeking a judgment declaring the rights, obligations and duties of the parties to this action.

WHEREFORE, Plaintiffs pray this Court grant them all equitable relief, injunctive relief, declaratory relief and damages to which they are entitled, including but not limited to:

(a)    Issuing a temporary restraining order requiring Defendants and all those acting in active concert or participation with them, including their successors, assigns, principals, partners, managers, members, employees, agents, officers, directors and shareholders, to cease and desist from proceeding with any foreclosure of the subject property until such time as a hearing on Plaintiffs' application for a permanent injunction may be completed;

(b)    Issuing a permanent injunction against Defendants and all those acting in active concert or participation with them, including their successors, assigns, principals, partners, managers, members, employees, agents, officers, directors and shareholders,

requiring them to cease and desist from proceeding with any foreclosure of the subject property;

(c)     Entering an appropriate judgment declaring the rights, obligations and duties of the parties to this action;

(d)     Entering an appropriate judgment declaring the Modification Agreement executed on December 20, 2008 is a valid contract between the parties that modified the Note and Mortgage;

(e)     Awarding Plaintiffs their reasonable costs and attorney's fees; and

(f)     Awarding Plaintiffs other appropriate relief to which they are entitled.

## COUNT II
### *Bad Faith/Willful and Malicious Conduct*

47.     Plaintiffs adopt and incorporate herein by referencing all preceding paragraphs as if fully set forth herein.

48.     Defendants have repeatedly failed to honor the terms of the Modification Agreement by initiating foreclosure proceedings against Plaintiffs and the subject property.

49.     Defendants wrongfully and in bad faith have violated the terms of the Modification Agreement by initiating foreclosure proceedings against Plaintiffs and the subject property.

50.     Plaintiffs allege that Defendants intentionally breached the implied in-law duty to deal in good faith in the evaluation and implementation of the Modification Agreement.

51.     Defendants have breached their duty of fair dealing and good faith owed to Plaintiffs, and Defendants' conduct in proceeding with foreclosure of the subject property and then proceeding to reinitiate foreclosure proceedings after the suspension of same is so flagrant, oppressive and/or committed with such reckless disregard of Plaintiffs' rights as to constitute willful and malicious conduct on the part of Defendants.

52.     As a proximate result of the aforementioned wrongful conduct of Defendants, Plaintiffs have suffered damages, including court costs and attorney's fees, to be shown at the time of trial.  Moreover, Plaintiffs have suffered anxiety, worry, humiliation, mental and emotional distress and other incidental damages.

53.     Defendants have acted toward Plaintiffs with conscious disregard of Plaintiffs' rights, or with the intent to vex, injure, or annoy Plaintiffs, such as to constitute oppression, fraud or malice thereby entitling Plaintiffs to punitive damages.

54.     Plaintiffs further aver that Defendants are guilty of conduct evincing a pattern or practice of intentional misconduct, or are guilty of conduct involving actual malice.

WHEREFORE, Plaintiffs demand judgment against Defendants in such a sum as a jury shall reasonably assess, including actual and punitive damages, plus interest, attorneys' fees, and all costs of this proceeding.

**COUNT III**

12

## ***Outrage***

55.     Plaintiffs adopt and incorporate herein by referencing all preceding paragraphs as if fully set forth herein.

56.     Plaintiffs aver that the conduct of Defendants is outrageous, goes beyond all bounds of human decency and should not be condoned, accepted or endured in a civilized society.

57.     As a result of Defendants' intentional, and/or reckless and/or outrageous conduct, Plaintiffs have suffered damages as follows:

(a)     Plaintiffs' credit has been damaged;

(b)     Plaintiffs' reputation in the community has been damaged;

(c)     Plaintiffs have suffered severe mental anguish, emotional distress, physical suffering, despair, frustration and humiliation; and

(d)     Plaintiffs will incur expenses necessitated by the filing of this lawsuit.

58.     Defendants consciously and deliberately engaged in oppression, fraud, wantonness or malice with regard to Plaintiffs, thereby depriving Plaintiffs of their legal rights and entitling them to punitive damages against Defendants.

WHEREFORE, Plaintiffs demand judgment against Defendants in such sum as a jury shall reasonably assess, including actual and punitive damages, plus interest, attorneys fees, and all costs of this proceeding in an amount exceeding the jurisdictional minimums of this court.

59.     Plaintiffs' Loan contains: (i) a 40 year term; (ii) negative amortization; (iii) a pre-payment penalty; (iv) total fees and points exceeding the Home Ownership and Equity Protection Act of 1994 (HOEPA) limits; and (v) a structure designed to guarantee default.   As such, Plaintiffs' Loan constitutes a high cost loan and a predatory loan, also known as a "toxic loan".

60.     On or about April 1, 2006, IndyMac MBS, Inc. ("IndyMac MBS"), Failed Bank and Deutsche Bank entered into an agreement entitled Pooling and Servicing Agreement (hereafter referred to as the "PSA").  The essence of the PSA is that loans owned and originated by Failed Bank were transferred to IndyMac MBS .   Thereafter, IndyMac MBS transferred the loans to a trust for which Deutsche Bank was the trustee (the "Trust").

61.     One effect of this transfer was that the subject loans were no longer a part of Failed Bank's balance sheet. The loans' owners were certificate holders of the Trust. Under the PSA, Deutsche Bank receives a fee for its role as trustee under the Trust, and Failed Bank receives a fee for servicing the loans.

62.     Upon information and belief, the Loan was a loan placed into the Trust pursuant to the PSA.  Thus, effective in 2006, Deutsche Bank was the trustee for the Trust that held the Loan, and Failed Bank was the servicer for the Loan.

63.     Upon the failure of Failed Bank in June or July 2008, the FDIC became the receiver of all of Failed Bank's assets, including the right to service the loans held in the Trust.

64.     From approximately July 2008 to March 18, 2009, the FDIC operated the assets of what was formerly Failed Bank through IndyMac Federal, an entity it formed to act as servicer and operator of Failed Bank's assets.

65.     From approximately July 2008 to March 18, 2009 the FDIC via IndyMac Federal had control of Failed Bank's assets and was responsible for the servicing of the Loan.

66.     In June or July of 2008, the FDIC  recognized the toxic nature of Failed Bank's loan portfolio (which portfolio included loans formerly serviced by Failed Bank), and began working to modify the loans formerly held by and originated by Failed Bank that were being serviced by Failed Bank at the time of the seizure.  The FDIC's modifications sought to (i) eliminate adjustable interest rate loans by converting them to fixed rate loans, and (ii) eliminate negative amortization features of such loans.

67.     The FDIC, via IndyMac Federal, modified the Loan to fix the interest rate and eliminate the negative amortization feature.

68.     To the extent the loan modification offer made to Handal had conditions related to income, the FDIC waived such conditions and ratified the Modification Agreement by (i) sending Handal conditions which were inconsistent with the facts provided to them, available to them and in their file; (ii) communicating to Handal that the Loan was modified; (iii) cashing the check forwarded with the Modification Agreement signed by Handal; (iv) signing the Modification Agreement;  (v) cashing payments made by Handal between

15

December 2008 and March 2009; and (vi) telling Handal he could not obtain another modification based on the fact that the Loan had previously been modified.

69.    OneWest Bank Group, LLC and its subsidiary OneWest acquired the former assets of Failed Bank from the FDIC pursuant to a Master Purchase Agreement (the "MPA") dated March 18, 2009.  At the time the FDIC held such assets in the name of IndyMac Federal, as conservator of the Failed Bank.  Pursuant to the MPA, OneWest took such assets in their "as-is" condition.

70.    Upon OneWest acquiring the former assets of Failed Bank, OneWest acquired the Loan, as modified by the Modification Agreement  signed by Handal on December 20, 2008, and signed by a First President of IndyMac Federal.

71.    Upon OneWest acquiring the former assets of Failed Bank, OneWest, in an attempt to improve its balance sheet, after its acquisition of the Loan, made an internal determination to not recognize the modification as granted by the FDIC and attempted to deceive, defraud and lie to Handal and claim the Modification Agreement had been denied.

72.    Upon OneWest acquiring the former assets of Failed Bank, OneWest's claim that the Modification Agreement had been denied was made with knowledge that such claim was false.

73.    Upon OneWest acquiring the former assets of Failed Bank, OneWest's claim that the Modification Agreement had been denied was made with an intent to deceive and defraud.

74.     Upon OneWest acquiring the former assets of Failed Bank, OneWest's claim that the Modification Agreement had been denied was made in violation of the general standards of practice in the collection industry and in violation of its duty of reasonable care owed to Plaintiffs.

75.     From approximately December 2008 to the present, OneWest has reported to credit reporting agencies that Plaintiffs are more than one hundred twenty days (120) delinquent.

76.     Handal has made each payment required under the Modification Agreement.

77.     Because the Loan was modified, OneWest's actions of reporting Plaintiffs as more than one hundred twenty days (120) delinquent was false.

78.     By reporting Plaintiffs to credit reporting agencies as delinquent between December 2008 to present, OneWest violated the duty of care owed to Plaintiffs as a borrowers.

79.     As a result of OneWest's fraudulent claim that the Loan was not modified and subsequently reporting Plaintiffs to the credit reporting agencies as being more than one hundred twenty days (120) delinquent, OneWest has caused severe damage to Plaintiffs' credit scores and their ability to obtain credit.

80.     Handal's damaged credit has resulted in denial of loan applications and high interest only loans.

81.     As servicer of the Loan, OneWest was acting in its own accord and as agent of the trustee Deutsche Bank.

82.     In or about December 2008, IndyMac Federal executed the Modification Agreement and accepted Plaintiffs' monthly payment of $ 869.20 specified thereunder, which payment was negotiated by IndyMac Federal on or about December 31, 2008.

## COUNT IV
### *Negligence/Wantonness/Negligent Servicing*

83.     Plaintiffs adopt and incorporate herein by referencing all preceding paragraphs as if fully set forth herein.

84.     Defendants had a duty to exercise reasonable care in their dealings with Plaintiffs.

85.     Defendants negligently and/or wantonly breached their duty by failing to implement the Modification Agreement executed and entered into by the parties on December 20, 2008.

86.     Defendants negligently and/or wantonly breached the duty owed to Plaintiffs by initiating foreclosure proceedings against Plaintiffs when a modification agreement was in effect.

87.     Defendants negligently and/or wantonly failed to fulfill the requirements set forth in federal modification program guidelines and servicer participation agreements.

88.     Defendants negligently and/or wantonly trained and/or supervised their officers, employees and agents in the implementation of the Modification Agreement.

89.    Defendants negligently and/or wantonly trained and/or supervised their officers, employees and agents in the servicing of the Loan.

90.    Defendants negligently and/or wantonly trained and/or supervised their officers, employees, and agents in the implementation and initiation of foreclosure proceedings.

91.    As a result of Defendants' negligence and/or wantonness, Plaintiffs have been damaged as follows:

(a)    Plaintiffs' credit has been damaged;

(b)    Plaintiffs' reputation in the community has been damaged;

(c)    Plaintiffs have suffered severe mental anguish, emotional distress, physical suffering, despair, frustration and humiliation; and

(d)    Plaintiffs will incur expenses necessitated by the filing of this lawsuit.

WHEREFORE, Plaintiffs demand judgment against Defendants in such sum as a jury shall reasonably assess, including actual and punitive damages, plus interest, attorneys fees, and all costs of this proceeding in an amount exceeding the jurisdictional minimums of this court.

## COUNT V
### *Fraud*

92.    Plaintiffs adopt and incorporate herein by referencing all preceding paragraphs as if fully set forth herein.

93.    IndyMac Federal entered the Modification Agreement and accepted Handal's modified mortgage payments, and Plaintiffs reasonably relied upon such agreement.

94.    After purchasing the servicing rights of the Loan on or about March 18, 2009, OneWest commenced collection efforts, including providing credit reporting agencies adverse reports regarding Plaintiffs.

95.    IndyMac Federal and OneWest knew or should have known that the Mortgage was modified in or about December 2008 and that Handal was current with the modified loan, as the Modification Agreement was signed by both IndyMac Federal and Handal.

96.    On information and belief, subsequent to IndyMac Federal's acceptance and execution of the Modification Agreement, a clerical or other staff person at either IndyMac Federal or OneWest stamped the Modification Agreement "DENIED" to enable it to collect on the pre-modification calculations.

97.    In reasonable reliance on the Modification Agreement, Handal did not seek alternative financing before his credit ratings had been irretrievably damaged by OneWest's negative reporting to the credit bureaus.  Handal now is unable to obtain alternate financing due to OneWest's incomplete and/or erroneous credit reporting.

98.    Plaintiffs have been damaged by IndyMac Federal and OneWest denying the Modification Agreement was completed by IndyMac Federal.

WHEREFORE Plaintiffs pray that this Court will find that IndyMac Federal and OneWest perpetuated a fraud upon them, and grant them actual and consequential damages, attorneys fees, costs of this litigation and such other relief as the Court deems just.

### COUNT VI
### *Violation of the Federal Debt Collection Practices Act (FDCPA)*

99.    Plaintiffs adopt and incorporate herein by referencing all preceding paragraphs as if fully set forth herein.

100.    IndyMac Federal and OneWest are debt collectors, as defined by 15 U.S.C. § 1692a(6).

101.    IndyMac Federal and OneWest have violated the FDCPA by communicating information which is known, or should be known, to be false.  15 U.S.C. 1692e (8).

102.    IndyMac Federal and OneWest have violated the FDCPA by failing to communicate timely that Plaintiffs disputed the debt represented by the Loan. 15 U.S.C. 1692e (8).

103.     IndyMac Federal and OneWest have violated the FDCPA by falsely representing the character, amount, or legal status of Plaintiffs' debt. 15 U.S.C. 1692e(21)(a), 1692e(10).

104.    IndyMac Federal and OneWest have violated the FDCPA by failing to disclose that communications were from a debt collector.  15 U.S.C. 1692e (11).

105.    IndyMac Federal and OneWest have violated the FDCPA by using deceptive means, *e.g.* modification paperwork requests, to obtain information and to collect on the Loan. 15 U.S.C. 1692e (10).

106.    The foregoing violations of the FDCPA occur(red) as a part of IndyMac Federal's and OneWest's standard procedures and practices toward consumers like Plaintiffs, and IndyMac Federal and OneWest is/were motivated by financial concerns in conducting such procedures and practices.

WHEREFORE Plaintiffs pray that this Court will find that IndyMac Federal and OneWest violated the FDCPA, and grant Plaintiffs actual damages, statutory damages for each violation of the FDCPA, attorneys fees, costs of this litigation and such other relief as the Court deems just.

## COUNT VII
### *Violation of the Federal Credit Reporting Act (FCRA)*

107.    Plaintiffs adopt and incorporate herein by referencing all preceding paragraphs as if fully set forth herein.

108.    IndyMac Federal and OneWest regularly and in their standard course of business furnish information to one or more consumer and/or credit reporting agencies ("Agencies") about transactions with its consumers.

109.    OneWest reported, or caused to be reported, negative information to the Agencies concerning Plaintiffs, which information was not verified and/or untrue.

110.    On information and belief, IndyMac Federal reported, or caused to be reported, negative information to the Agencies concerning Plaintiffs, which information was not verified and/or untrue

111.    In failing to review all relevant information prior to reporting to the Agencies, IndyMac Federal and OneWest violated the FCRA.

112.    In failing to correct and/or update the information reported to the Agencies, IndyMac Federal and OneWest violated and continue to violate the FCRA.

113.    In failing to report to the Agencies that the debt was under dispute, IndyMac Federal and OneWest violated and continue to violate the FCRA.

114.    In failing to provide notice to Plaintiffs of its negative reporting to the Agencies, IndyMac Federal and OneWest violated and continue to violate the FCRA.

WHEREFORE Plaintiffs pray that this Court will find IndyMac Federal and OneWest violated the FCRA, and grant Plaintiffs actual damages resulting therefrom, statutory damages pursuant to the FCRA, punitive damages, attorneys fees, costs of this litigation and such other relief as the Court deems just.

Done this 11th day of  September, 2012.

*/s/ Walter F. Scott III*

Walter F. Scott III

*/s/ Sylvion S. Moss*

Sylvion S. Moss

*Attorneys for plaintiffs*

*Guillermo A. Handal and*

*Nelson M. Handal, M.D.*

**OF COUNSEL:**
GALLOWAY & SCOTT, LLC
2200 Woodcrest Place, Suite 310
Birmingham, AL 35209
205.949.5580
205.949.5581 *fax*
wfs3@gallowayscott.com
ssm@gallowayscott.com

<u>**SERVICE**</u>

Please serve defendant via certified mail at:

> IndyMac Federal Bank, FSB
> c/o Donald B. McKinley
> Regional Counsel
> Federal Deposit Insurance Corporation
> 1601 Bryan Street
> Dallas, TX 75201

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 11th day of September, 2012, served a copy of the foregoing on counsel of record by notice of electronic filing on those who are registered participants in the electronic filing system and upon counsel of record who are not participants in the electronic filing systems by placing a copy of same in the United States Mail, first class postage prepaid and addressed as follows:

*Attorneys for OneWest Bank, F.S.B. and*
*Deutsche Bank National Trust Company*
Ethan Tidmore, Esq.
Phillip Joseph Carroll III, Esq.
Bradley Arant Boult Cummings, L.L.P.
1819 Fifth Avenue North
Birmingham, AL  35203
etidmore@babc.com
pcarroll@babc.com

*Attorneys for Plaintiffs*
Leon A. Boyd, Esq.
Herman Cobb, Esq.
Cobb, Boyd, White & Cobb
Post Office Box 2047
Dothan, AL  36302
bo@cobbfirm.com
herman@cobbfirm.com

*Attorney for Farmer, Price, Hornsby &*
*Weatherford*
Joel William Weatherford, Esq.
Farmer, Price, Hornsby & Weatherford
Post Office Drawer 2228
Dothan, AL  36302
jweatherford@fphw_Law.com


                              _____
                                    */s/ Walter F. Scott III*
                                    OF COUNSEL